IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRAVIS H. WILLIAMS,

    Plaintiff,

vs.                                                          1:19-cv-00539-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Travis H. Williams' Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support (Doc. 21), which was fully briefed on February 10, 2020. *See* Docs. 23–25. The parties consented to my entering final judgment in this case. Docs. 4, 8, 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to consider Mr. Williams' diagnosed fibromyalgia at any step of the sequential evaluation process. I therefore GRANT Mr. Williams' motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

**III. Background and Procedural History**

Mr. Williams was born in 1973, graduated from high school, and worked as a waiter, a retail manager, and a butcher. AR 295, 334.[4] Mr. Williams filed an application for Disability Insurance Benefits ("DIB") on February 2, 2016, alleging disability since October 1, 2014 due to back injury, depression, arthritis in his hands and feet, and high blood pressure. AR 295–96, 333. The Social Security Administration ("SSA") denied his claim initially on July 22, 2016. AR 226–29. The SSA denied his claims on reconsideration on November 7, 2016. AR 233–38. Mr. Williams requested a hearing before an ALJ. AR 240–41. On January 30, 2017, ALJ Michael Leppala held a hearing. AR 140–95. ALJ Leppala issued his unfavorable decision on August 23, 2018. AR 8–30.

The ALJ found that Mr. Williams met the insured requirements of the Social Security Act through December 31, 2019. AR 13. At step one, the ALJ found that Mr. Williams had not engaged in substantial, gainful activity since October 19, 2014, his alleged onset date. AR 14. At step two, the ALJ found that Mr. Williams suffered from the following severe impairments: degenerative changes of the lumbar spine, osteoarthritis, anxiety, and depression. *Id*.

At step three, the ALJ found that none of Mr. Williams' impairments, alone or in combination, met or medically equaled a Listing. AR 14–15. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Williams' RFC. AR 15–23. The ALJ found Mr. Williams had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a), which includes lifting, carrying, pushing and/or pulling up to ten pounds occasionally and less than ten pounds frequently; standing and/or walking for about two hours in an eight hour workday, and sitting for about six hours in an eight-hour workday, all with normal

---

[4] Document 13-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

> breaks. He can frequently climb[ ] ramps and stairs, but never climb[ ] ladders, ropes, or scaffolds. The Claimant can frequently stoop, frequently kneel, frequently crouch, and occasionally crawl. As for mental demands of work, the Claimant can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, [and] deal with routine changes in work setting. The Claimant can maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. The Claimant can perform simple, routine, and repetitive, tasks, and can perform jobs involving work primarily with things and not people.

AR 15–16.

At step four, the ALJ concluded that Mr. Williams could not perform any of his past relevant work. AR 23. The ALJ found Mr. Williams not disabled at step five because he could perform jobs that exist in significant numbers in the national economy, such as document preparer and final assembler. AR 23–24. On September 20, 2018, Mr. Williams requested that the Appeals Council review the ALJ's unfavorable decision. AR 293.[5] Mr. Williams submitted additional evidence to the Appeals Council. AR 36–139. On April 17, 2019, the Appeals Council denied the request for review. AR 1–7. Mr. Williams timely filed his appeal to this Court on June 12, 2019.[6] Doc. 1.

**IV.     Mr. Williams' Claims**

Mr. Williams raises six arguments for reversing and remanding this case[7]: (1) the ALJ erred by failing to consider his diagnosed fibromyalgia at any step of the sequential evaluation process; (2) the ALJ failed to properly weigh the opinion co-authored by treating physician Dr.

---

[5] Mr. Williams requested an extension of time to submit argument and/or evidence, which the Appeals Council granted. AR 31–35, 294.

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

[7] The Court notes that Mr. Williams' attorney failed to comply with the Court's 27-page limit for motions. *See* D.N.M.LR-Civ. 7.5. Future filings must adhere to the Court's page limits.

5

Amer and treating nurse practitioner Holly Purcell-Callin, CNP; (3) the ALJ erred in assigning little weight to the opinion of treating psychotherapist Carolyn Tjoland, LPCC; (4) the ALJ failed to address limitations in his ability to reach, handle and finger; (5) the ALJ failed to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles; (6) the ALJ erred in evaluating his symptoms. Doc. 21 at 18–30. The Court agrees that the ALJ erred by failing to consider his diagnosed fibromyalgia at any step of the sequential evaluation process, and therefore does not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.  Analysis**

Mr. Williams argues that the ALJ failed to consider or discuss his diagnosed fibromyalgia at any step of the sequential evaluation process. Doc. 21 at 20–22. He argues that this failure is reversible error. *Id*. The Commissioner argues that the ALJ did not err because Mr. Williams' fibromyalgia was only "vaguely referenced" and because, while the ALJ never mentioned fibromyalgia, the ALJ "said he considered all medically-determinable impairments." Doc. 23 at 9–10. The Court agrees with Mr. Williams.

"It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (internal citations omitted); *see also* 42 U.S.C. § 423(d)(2)(B) (In determining eligibility for disability benefits, "the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments . . . ."); 20 C.F.R. § 404.1523(c) (The Commissioner must "consider the combined impact of [all] impairments throughout the disability determination process."); 20 C.F.R. § 404.1545(a)(2) (In assessing the claimant's RFC, the Commissioner must "consider all of [the

6

claimant's] medically determinable impairments of which [he is] aware, including [the claimant's] medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523."). "[T]he failure to consider all of [a claimant's] impairments is reversible error." *Salazar*, 468 F.3d at 621 (citing *Langley,* 373 F.3d at 1123–24).

In this case, Mr. Williams' treating physician Dr. Lyle Amer first diagnosed him with fibromyalgia on May 17, 2017.[8] AR 574–77. On this date, Dr. Amer and Holly Purcell-Callin, CNP, jointly completed and signed a Physical Medical Source Statement and listed fibromyalgia as one of Mr. Williams' diagnoses. *Id*. Mr. Williams testified at the hearing that he had been diagnosed with fibromyalgia, and that the fibromyalgia caused weakness in his hands, muscle weakness and aches, and fatigue. AR 160. In addition, at the administrative hearing Mr. Williams' attorney highlighted Mr. Williams' recent fibromyalgia diagnosis as well as the references in the record to signs of fibromyalgia: fatigue, muscle spasms, pain, slow cognition, memory loss, numbness, dizziness, and headaches. AR 192–93.[9]

---

[8] Dr. Amer may have diagnosed Mr. Williams with fibromyalgia on February 17, 2017. *See* AR 579. However, the Court is unable to read all the diagnoses listed on that visit due to the doctor's illegible handwriting. *Id*. Although both Mr. Williams and the Commissioner state that Dr. Amer diagnosed fibromyalgia on March 20, 2017, *see* Doc. 21 at 8; Doc. 23 at 9, that visit appears to have been with CNP Purcell-Callin. *Compare* signature on AR 578 *with* signature of CNP Holly Purcell-Callin on AR 577. A medically determinable impairment must be diagnosed by an "acceptable medical source," which does not include a nurse practitioner. 20 C.F.R. 404.1521 (effective March 27, 2017). The first unequivocal diagnosis of fibromyalgia by an acceptable medical source in the record, therefore, is the Physical Medical Source Statement signed by Dr. Amer on May 17, 2017. AR 574–77. In any case, this May 17, 2017 diagnosis was in the medical evidence considered by the ALJ in issuing his August 23, 2018 opinion. AR 11–25, 30.

[9] Mr. Williams' fibromyalgia diagnosis was confirmed by rheumatologist Dr. Ricardo Garcia on September 19, 2018, shortly after the ALJ issued his decision. AR 36–44. The Appeals Council found that this evidence did "not relate to the period at issue" because the ALJ decided Mr. Williams' case through August 23, 2018. AR 2. Mr. Williams did not challenge the Appeals

7

Despite Mr. Williams' diagnosis of fibromyalgia prior to the ALJ hearing and the discussion of his fibromyalgia at the ALJ hearing, the ALJ's decision contains absolutely no reference to Mr. Williams' fibromyalgia diagnosis. The ALJ's failure to consider or discuss one of Mr. Williams' medically diagnosed impairments is error which requires remand. *Salazar*, 468 F.3d at 621.

The Commissioner argues that the ALJ's failure to discuss Mr. Williams' diagnosis of fibromyalgia is "harmless." Doc. 23 at 9. Because of the bar against *post hoc* rationalizations, the only possible way to salvage a legally flawed decision is a "harmless error" analysis. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In reviewing Social Security cases, harmless error applies only if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* The Commissioner fails to show the error in this case is harmless. The Commissioner cites *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) for the proposition that "any alleged error at step two is harmless if the ALJ finds other severe impairments and proceeds through the rest of the sequential evaluation, and includes all substantiated limitations in the RFC." Doc. 23 at 9. While this case may render the failure to consider all of Mr. Williams' impairments harmless at step two, it does not render this error harmless at the other steps of the sequential evaluation process. In *Carpenter*, the claimant argued that the ALJ "applied the wrong legal standard at step two by only considering her impairments individually to determine whether they were sufficiently severe to limit her ability to do basic work activities." *Carpenter*, 537 F.3d at 1266. The Tenth Circuit found the

---

Council's rejection of this evidence. Because this Court remands based on the ALJ's failure to consider Mr. Williams' diagnosis of fibromyalgia, on remand, the Court recommends that the Commissioner consider how Dr. Garcia's opinion corroborates the opinion of Dr. Amer, which the ALJ did consider.

ALJ's failure "to consider the combined effect of all of [the claimant's] impairments" at step two harmless because the ALJ "reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Id*.

The Tenth Circuit in *Carpenter*, however, went on to hold that the ALJ erred in step three by failing to discuss the diagnoses of polyneuropathy and kyphosis made by one of the claimant's treating physicians. *Id*. at 1267. Mr. Williams similarly argues that the ALJ failed to consider a diagnosis and that the ALJ's "failure to consider [his] fibromyalgia at step two was prejudicial as it tainted his RFC and evaluation of symptoms findings." Doc. 24 at 3. The Commissioner does not meaningfully address the ALJ's failure to consider fibromyalgia at the other steps of the sequential evaluation process, and the Court does not find this error to be harmless. *See Brown v. Barnhart*, 182 F. App'x 771, 774 (10th Cir. 2006) (unpublished) (finding the "ALJ's failure to consider [claimant's] fibromyalgia impaired his analysis at step three and step four"); *see also Moore v. Barnhart*, 114 F. App'x 983, 990 (10th Cir. 2004) (unpublished) ("[B]ecause the ALJ did not accurately perceive the nature of plaintiff's fibromyalgia, he erroneously failed to properly consider both the treating physician's opinions and plaintiff's statements regarding her symptoms."). First, Mr. Williams testified that his fibromyalgia caused him to have "muscle aches and fatigue" and soreness "all over all the time." AR 160. The ALJ found Mr. Williams' "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . not entirely consistent with the medical evidence of record." AR 16. The ALJ, however, failed to consider the medical evidence diagnosing Mr.

Williams with fibromyalgia.[10] Second, the ALJ discounted Dr. Amer's opinion in part because he had "no history of surgeries for his impairments." AR 21. This rationale does not make sense for a diagnosis of fibromyalgia. Third, the ALJ based the RFC limitations of "standing and walking two hours of an eight[-]hour workday" only on Mr. Williams' "osteoarthritis and degenerative changes of the spine." AR 22. Based in part on the diagnosis of fibromyalgia, however, Dr. Amer opined that Mr. Williams could only stand for 10 minutes at a time and sit for 15 minutes at a time before needing to change position; and could sit and stand/walk less than two hours in an eight-hour workday. AR 575. Fourth, the ALJ based the RFC limitation of "lifting carrying, pushing and/or pulling up to ten pounds occasionally and less than ten pounds frequently" only on "degenerative changes of the spine combined with arthritis of the joints." AR 22. Based in part on the diagnosis of fibromyalgia, however, Dr. Amer opined that Mr. Williams could lift and carry "less than ten pounds." AR 576. A reasonable factfinder could have found both the limitations in Dr. Amer's opinion and Mr. Williams' reported symptoms more credible had he or she considered Mr. Williams' diagnosis of fibromyalgia. Because a

---

10  Fibromyalgia . . . is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue. It is a chronic condition, causing long-term but variable levels of muscle and joint pain, stiffness and fatigue. The disease is poorly-understood within much of the medical community and is diagnosed entirely on the basis of patients' reports and other symptoms.

*Moore*, 114 F. App'x at 991 (internal citations and quotations omitted). Fibromyalgia is defined by a repeated manifestation of at least six symptoms, signs or co-occurring conditions including widespread pain, fatigue, depression, and anxiety disorder. SSR 12-2p 2012 WL 3104869, *3. "[I]ts symptoms are entirely subjective. *There are no laboratory tests for the presence or severity of fibromyalgia*." *Moore*, 114 F. App'x at 991 (internal citation omitted) (emphasis in original). Fibromyalgia patients look generally healthy. "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, . . . muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness." *Id*. at 991–92. "Fibromyalgia can be disabling." *Id*. at 991.

reasonable factfinder could have decided differently, the error is not harmless, and remand is required.

The Commissioner argues that Mr. Williams' fibromyalgia was only "vaguely referenced" in the treatment records submitted to the ALJ prior to his decision. Doc. 23 at 9. Because Dr. Amer only diagnosed Mr. Williams with fibromyalgia in May of 2017,[11] the Commissioner asserts that the "ALJ did not err in omitting a discussion" of whether Mr. Williams' fibromyalgia "rose to the level of a medically determinable impairment, much less a severe impairment." *Id*. The Commissioner cites no legal authority for this argument, and the Court finds it to be without merit.[12] At step two, an ALJ must consider whether a claimant's impairment is a medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii).[13]

Finally, the Commissioner argues that the Court should take the ALJ at his word because the ALJ declared that he "considered all medically-determinable impairments (severe and non-severe) when defining [Mr. Williams'] RFC." Doc. 23 at 10. The Tenth Circuit has rejected the argument that an ALJ stating he "considered all the evidence of record" is sufficient to show the

---

[11] The Commissioner erroneously states the diagnosis occurred in March of 2017. *See* n.8 *supra*.

[12] The Commissioner does not argue that the ALJ's failure to consider whether fibromyalgia was a medically determinable impairment is harmless. *See* Doc. 23 at 9. Instead, the Commissioner argues that because fibromyalgia was not diagnosed until May of 2017, the ALJ did not have to consider whether it was a medically determinable impairment. *Id*. The Court can find no support for this argument. The Commissioner also suggests that a diagnosis of fibromyalgia from a "four-month period between May and September 2018" does not meet the 12-month durational requirement for a disabling impairment. Doc. 23 at 9 n.5. However, under 20 C.F.R. § 404.1509, a disabling impairment "must have lasted **or must be expected to last** for a continuous period of at least 12 months" (emphasis added). *See also Brown*, 182 F. App'x at 773 (a claimant's "fibromyalgia need not have lasted for twelve months prior to the hearing, as long as it could be expected to last for at least another five months after the hearing").

[13] A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques…[and] . . . must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521.

ALJ considered an impairment not mentioned elsewhere in the decision. *See Salazar,* 468 F.3d at 622 ("[T]he Commissioner asserts that the ALJ did in fact consider this impairment because he stated that he considered 'all the evidence of record.' . . . This assertion is untenable."); *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003) (unpublished) ("ALJ's failure to even mention plaintiff's osteoarthritis leads us to doubt that he formed any conclusion at all regarding plaintiff's hands."). The ALJ's decision provides no evidence that the ALJ considered Mr. Williams' fibromyalgia along with his other impairments. The ALJ is charged with carefully considering all of the relevant evidence and linking his or her findings to specific evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996) (holding that "[t]he record must demonstrate that the ALJ considered all of the evidence," and, while the ALJ need not discuss every piece of evidence, the ALJ must "discuss[ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). When, as here, an ALJ does not provide any explanation for rejecting significant medical evidence, the Court is "left to speculate what specific evidence led the ALJ to [his conclusion]," *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995), and the Court cannot meaningfully review the ALJ's determination. *See Clifton,* 79 F.3d at 1009. While there may be substantial evidence from which the ALJ could conclude that Mr. Williams is not disabled after careful consideration of his additional impairment, the Court is "not in a position to draw factual conclusions on behalf of the ALJ." *Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001) (quotation omitted). On remand, the Commissioner must adequately consider and discuss all of Mr. Williams' diagnosed impairments.

## VI. Conclusion

The ALJ erred by failing to consider Mr. Williams' diagnosed fibromyalgia at any step of the sequential evaluation process. The Court remands so that the ALJ can remedy this error. The Court does not reach Mr. Williams' other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Mr. Williams' Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support (Doc. 21) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge